---

### J. R. GORDON v. PINTSCH GAS COMPANY.

(Filed 12 November, 1919.)

1. **Judgments—Set Aside—Excusable Neglect.**

   Where a defendant, known as "The Pintsch Gas Company," has been sued in that name, and failing to answer, a judgment by default and inquiry after the lapse of several years has been taken, and final judgment upon the inquiry thereafter regularly entered, and it thereafter appears that the true name of the defendant was the "Pintsch Compressing Com-pany," but that the summons had been duly forwarded to the president of the "compressing company," who had employed local attorneys to repre-sent his company from the beginning, the judgment may not be set aside for excusable neglect.

2. **Judgment—Correction—Statutes—Motions—Abatement.**

   Where a defendant company has transacted business in a locality as the "Pintsch Gas Company," but is in fact the "Pintsch Compressing Company," it may not knowingly conceal its real name until after judg-ment by default and inquiry has been regularly prosecuted to final judg-ment, and then successfully resist a judgment on a motion to correct the pleadings, process, and judgment. Rev., 507, its remedy was by motion to abate the action.

3. **Appeal and Error—Judgments—Correction—Statutes—Pleadings—Pro-cess—Court's Discretion.**

   The provisions of Rev., 507, among other things, allowing the judge or court, before or after judgment, in furtherance of justice, and on such terms as may be proper, to amend any pleadings, process of proceedings, by correcting a mistake in the name of a party, etc., is within the discre-

tion of the Superior Court judge, and not reviewable on appeal in the absence of palpable abuse.

WALKER, J., dissenting; ALLEN, J., concurring in the dissenting opinion.

APPEAL by defendant from *Lane, J.,* at September Term, 1919, of RICHMOND.

This action was instituted against the Pintsch Gas Company in 1913 to recover damages for emptying sewage on the lot of the plaintiff in the town of Hamlet, N. C. Judgment by default and inquiry was taken at December Term, 1913, for want of an answer. At March Term, 1918, the inquiry was instituted, and the jury found, in response to the issue submitted: "What damages, if anything, is the plaintiff entitled to recover of the defendant in this action?" "$2,975." And thereupon judgment was entered for that sum.

On 26 June, 1919, the counsel for the plaintiff gave notice of a motion in due form that at the next term of the Superior Court of Richmond, to be held on Monday, 14 July, 1919, motion would be made in said court that the court should "amend process, pleading, and judgment in the case of J. R. Gordon against the Pintsch Gas Company, so as to read and to be *J. R. Gordon v. Pintsch Compressing Company,* said cause having been tried and judgment rendered at March Term, 1918, of the Superior Court of Richmond." This notice was served on the superintendent and manager of the defendant Pintsch Compressing Company on 2 July, 1919, and affidavits were filed by the plaintiff and others. The plaintiff introduced the record of the judgment by default and inquiry at December Term, 1913, and of the verdict, and final judgment at March Term, 1918.

The affidavit of M. R. Sharpe was filed, that in 1912 and 1913 he was manager and superintendent of the defendant's plant at Hamlet, N. C., and that the summons in this case of *J. R. Gordon v. Pintsch Gas Company* was served upon him, and he immediately sent the copy left with him by the sheriff to the general office of the defendant, who employed resident counsel to represent them; that there was no other plant in Richmond County in the business of manufacturing gas and its allied products in 1912 and 1913, and that the summons was served on him the latter year.

A. B. McDonald filed an affidavit that the plant of the defendant at Hamlet was built about 1897; that the "defendant was always known by the name of and as Pintsch Gas Company; that it was recognized and known at all times by such name; that the first time that this affiant ever knew, or even heard, that the defendant was named Pintsch Compressing Company was after judgment final had been recovered against it in this action"; that M. R. Sharpe was superintendent and manager

of the defendant at Hamlet during the years 1912 and 1913, and for many years prior thereto; and that it was the only person or corporation in said county known by the name of either Pintsch Compressing Company or Pintsch Gas Company, and that he has been many years deputy sheriff of Richmond County, and at all times the defendant has been known, recognized, and acting as the Pintsch Gas Company.

The plaintiff, J. R. Gordon, in his affidavit, reiterated the above statement of fact, and added that after the death of the original counsel employed by the defendant in this action had died, the defendant employed another resident counsel to represent it, and that M. R. Sharpe, its superintendent, knew that said action had been brought, and was intended to be brought, against the company which he represented; that it had no other name posted at the entrance of its plant or elsewhere, as its true name, as required by law, and that it was recognized as the Pintsch Gas Company and paid bills and accounts charged against it in such name; that it was the only plant doing such business in said county or owning or operating a line of sewage upon the land of the defendant, and it never made any contention that it "was not sued in the right name" until the statute of limitations had run against the plaintiff's cause of action, although it knew it was the real party sued, and knew of each and every proceeding and move made in said trial thereof, and it has not been misled in any particular herein, being at all times fully informed as to the real and true contention of the plaintiff. The affidavits filed by the defendant's general superintendent (in New York) did not deny any of the above statements, but rested its contention upon the ground that after the summons in the action of the plaintiff against the Pintsch Gas Company was sent to it by the local superintendent, Sharpe, it employed counsel to look after the matter, Major John D. Shaw, and after his death the company retained Mr. John P. Cameron, and added that his recollection was that a second summons had been served in the same action in the name of the "Pintsch Gas and Compressing Company," and that the matter had been left to counsel, and after the death of the second counsel, the defendant employed Mr. Bynum, through whom it is resisting this motion.

The motion was continued from time to time by consent of parties till September Term, 1919, at which term the court rendered judgment "correcting the pleadings, process, and judgment in such matter, by inserting the word 'Compressing' in the name of the defendant Pintsch Gas Company, instead of the word 'Gas,' and thereby correcting the same to name the true defendant, Pintsch Compressing Company, who was in court under process issued, and was represented from the time of the institution of said action until final judgment was signed, and until the present time, and it further appearing to the court that said

motion, notice, and other processes were made, served, and properly executed," it was decreed that the motion should be granted, and that "said process, pleadings, issues, and judgment be and the same, and each thereof, is amended by inserting the word 'Compressing' instead of the word 'Gas,' making the name of defendant read 'Pintsch Compressing Company,' instead of 'Pintsch Gas Company.'" From this judgment the defendant appealed.

*Lorenzo Medlin for plaintiff.*
*Fred W. Bynum for defendant.*

CLARK, C. J. The defendant, upon its own showing, failed "to give the matter that amount of attention which a man of ordinary prudence usually gives to his important business," and therefore would not be entitled to set aside the judgment for excusable neglect, even if such motion had not been barred by the lapse of more than a year. *Sluder v. Rollins,* 76 N. C., 271; *Roberts v. Allman,* 106 N. C., 394, and citations thereto in Anno. Ed.

The case stands, therefore, upon the power of the court, in its discretion, to allow the amendment asked for. Rev., 507, provides that the "Judge or court may, before and after judgment, in furtherance of justice and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party; or by correcting a mistake in the name of a party, or a mistake in any other respect," etc. The language of the statute itself shows that this is a discretionary power, and it has always been held that the granting or refusal of amendments in the cases named is not reviewable by appeal except in cases of palpable abuse. See citations to Pell's Revisal, sec. 507. Also, *Sheldon v. Kivett,* 110 N. C., 411, and cases there cited.

The evidence in this case fully warranted the findings of fact in the judgment, and the grant of the leave to amend. There is no question upon the affidavits on both sides that the Pintsch Compressing Company was the party charged with committing the tort sued on; that the general manager of the compressing company was served with summons; that he sent it to the general office in New York, which employed counsel, and at his death employed another counsel, and later, on the death of the latter counsel, employed another; that the company sued was known generally by the name mentioned in the summons, which is held sufficient, even as to defendant's in an indictment, subject to plea in abatement in which the defendant must give its true name. The general manager in New York, in his affidavit, states that his recollection is that a second summons was served, giving the name of defendant as the "Pintsch Compressing and Gas Company." There is no indication that

the defendant suffered any prejudice by reason of the misnomer, and it has waived any objection by not giving its true name by plea in abatement.

"A misnomer does not vitiate provided the identity of the corporation or person with that intended by the parties is apparent, whether it is in a deed, *Asheville Division v. Aston,* 92 N. C., 584, or in a judgment, or in a criminal proceeding, *McCrae v. Starr,* 5 N. C., 252."

The judgment by default and inquiry in December, 1913, and the judgment final in March, 1918, upon the verdict of the jury, were both taken regularly "according to the course and procedure of the courts." There is no question that this appellant had the fullest knowledge that the action was against itself, and that it had the amplest opportunity to defend.

The amendment rested in the discretion of the court.

Affirmed.

WALKER, J., dissenting: There was no serious denial by the defendant of the right to have the record amended by inserting the correct name of defendant for the incorrect one—that is, the compress company for the gas company, two names radically different in pronunciation and not coming under the rule of *idem sonans.* The power of amendment was not the real point raised by the defendant, but his right to answer, if the power was exercised and the amendment made. My opinion is that he should have been granted that right. If the plaintiff could enforce his judgment, the amendment was not necessary, and the fact that it was made shows that plaintiff and the court considered it necessary in order to enforce the judgment. It was, therefore, a material amendment, and not merely formal. The plaintiff was asking for a favor from the court, and when he received it, it does not come with good grace from him to question defendant's right to be heard. But I do not regard it as a mere favor the defendant is asking of the court, but a right to which he is entitled. In *Atwood v. Landis,* 22 Minn., 558, the Court went beyond the position I now take and held the judgment in a similar case to be void, the process not having been served on the party by his right name. It is not necessary that we should go so far, as defendant only asks leave to answer. The facts of that case were precisely like those in this record, as the man upon whom the summons was served was the one who owed the debt. *Farnham v. Hildrich,* 32 Barbour (N. Y.), 277, is directly in point. It was decided as follows:

"1. The judgment and execution must describe the party whose property is sought to be taken, and it is not enough that the right man is made to pay a debt.

"2. The sheriff can only execute the process against the person or property of the individual named.

GORDON *v.* GAS CO.

"3. Where a defendant, sued by a wrong name, fails to appear in the action, he does not waive his right to object to the misnomer, after judgment and execution," citing many authorities.

This decision was approved in the *Minnesota case,* which we cited above. See, also, *Cole v. Hindson,* 101 English Rep. (Reprint), 528 (S. C., 6 Term Rep., 234). All these cases decide beyond any doubt that if plaintiff is permitted to amend, the defendant should be allowed to answer or demur as if there had been no judgment.

But, aside from authority upon this question, it would seem to be fair and just that defendant should be allowed to answer to the merits. If plaintiff's amendment is necessary in order that he may enforce the judgment, it is substantial, and no reason, in that view, can be discovered why defendant should not be entitled to plead or answer in the case, the judgment being set aside for that purpose. The defendant was not by the law called upon to answer a defective complaint filed under defective process, nor was it required to come into a suit, appear, and plead when it had not been properly summoned to do so. When process was served upon the compress company, even if the same was defective, it had the right to retain counsel to investigate and protect its interests, and this cannot be used to its prejudice. A person would be very imprudent and unwise to pursue any other course. It did not appear because it was not required to do so, and waive its rights in favor of the plaintiff. If one is served with process by one name, he is not bound to answer if that is not his true name, but is quite different. He is not bound to correct the plaintiff's, or the sheriff's, mistake. It appears, or at least was stated in the argument, that the lot in question was not worth over $700, and the plaintiff offered to sell it for $800, and yet the damages were assessed at four times that much, or $2,975. This is a large recovery in any case, but especially so, and also a very unjust one, when the defendant has properly had no day in court. A plaintiff must not only intend to sue the one whom he alleges to be liable to him, but he must actually do so, and a suit against the gas company is *not* a suit against the compress company. *Hassell v. Daniels, etc., Steamboat Co.,* 168 N. C., 296.

The judgment by default and inquiry was rendered at December Term, 1913, and the inquiry was not executed until March Term, 1918. In the meantime, the two attorneys who represented the defendant successively in Richmond County for many years have died.

ALLEN, J., concurs in this dissenting opinion.